IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA )
)
)  CRIMINAL ACTION FILE
v. )
)  NUMBER 1:09-cr-25-TCB-CCH-4
OSCAR EDUARDO GALVIS-PENA )
)

**ORDER**

This matter is before the Court on Defendant Oscar Eduardo Galvis-Pena's objections [344] to Magistrate Judge C. Christopher Hagy's report and recommendation (the "R&R") [336], which recommends that Galvis-Pena's motions to dismiss [308 & 317] be denied.

I. **Background**

This case arises out of an alleged conspiracy to launder money for the purpose of aiding and abetting the distribution of controlled substances. Defendants are charged with committing, conspiring to commit, and aiding and abetting acts of money laundering in violation of 18 U.S.C. §§ 2, 1956 & 1957. Defendants are also charged with conspiring to aid and abet the

distribution of controlled substances through acts of money laundering in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841 & 846.

Defendant Galvis-Pena has filed two motions to dismiss, in which he argues that the indictment should be dismissed based on (1) the extraterritorial nature of the crimes alleged, and (2) outrageous governmental conduct. Judge Hagy has issued an R&R, rejecting these grounds for dismissal and recommending that Galvis-Pena's motions to dismiss be denied. Galvis-Pena filed timely objections to the R&R.

## II. Discussion

### A. Standard of Review

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982)).[1] This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n. 4 (11th Cir.2009) (discussing the continuing validity of *Nettles*).

2

made." 28 U.S.C. § 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[2]

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not

---

[2] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to de novo review).

help to relieve the workload of the district court." *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

After conducting a complete and careful review of the R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C).

### B. Galvis-Pena's Objections

The Court has conducted a de novo review of those portions of the R&R to which Galvis-Pena has objected.

#### 1. Denial of an Evidentiary Hearing

Judge Hagy decided not to conduct an evidentiary hearing prior to making his recommendation on Galvis-Pena's motions to dismiss the indictment. In doing so, Judge Hagy first noted that Galvis-Pena had not requested such a hearing. Next, Judge Hagy reasoned that such a hearing "would involve evidence of the entire conspiracy and the Government's role in it, would be indistinguishable from the full trial, and would be a waste of judicial resources."

Galvis-Pena objects to Judge Hagy's decision not to conduct an evidentiary hearing. He argues that Judge Hagy was wrong to say that no hearing was requested, because he requested a hearing in his reply brief. He further argues that "an evidentiary hearing would be exceptionally useful and not a 'waste of judicial resources' in that there are factual issues concerning the jurisdiction of the court and the conduct of the government and those issues could be resolved without 'a full trial' but instead with the testimony of individual case agents."

As an initial matter, the Court notes that Galvis-Pena's purported request for an evidentiary hearing was not properly made. In fact, it was nothing more than an off-hand remark in the concluding paragraph of his reply brief that "the Court should have an evidentiary hearing." Galvis-Pena's motions themselves did not request a hearing, and because he did not suggest a hearing until his reply, the Government had no opportunity to respond to the suggestion. Thus, even if Galvis-Pena intended to request a hearing, he did not properly present his request to the Court. Moreover, even if a proper request for a hearing had been made, Judge Hagy would have been correct to deny it for the reasons discussed below.

5

### 2. Sufficiency of the Indictment

In his motions to dismiss, Galvis-Pena argues only two grounds for dismissal: lack of extraterritorial jurisdiction and outrageous governmental conduct. In his objections to the R&R, he raises a new argument—that the indictment should be dismissed because it "essentially 'parrots' the statutory elements of the crimes charged and are [sic] supported by a vague description of the alleged money laundering conspiracy in count one and a more vague description of an alleged drug trafficking conspiracy in count two." The Court might construe this as an argument that the indictment fails to state an offense, or that it fails to adequately inform Galvis-Pena of the charges against him. But either way, the argument was not raised in Galvis-Pena's motions to dismiss; therefore, it was not raised before Judge Hagy, and it will not be considered here. *Williams*, 557 F.3d at 1292.

### 3. Count 1 and Counts 15 Through 75

Count 1 of the indictment alleges that Galvis-Pena conspired with his co-Defendants to engage in acts of money laundering in violation 18 U.S.C. § 1956(h). Counts 15 through 75 allege that Galvis-Pena committed acts of money laundering in violation of 18 U.S.C. § 1956(a) and aided and abetted acts of money laundering in violation of 18 U.S.C. § 2. In his motions to

6

dismiss, Galvis-Pena argues that these statutes cannot be applied against him because his conduct occurred outside the United States.

There is extraterritorial jurisdiction over conduct prohibited by § 1956 if it involves funds exceeding $10,000 and, "in the case of a non-United States citizen, the conduct occurs in part in the United States." 18 U.S.C. § 1956(f). This principle also determines the extraterritorial reach of conspiracy and aiding and abetting charges relating to § 1956. *See United States v. Belfast*, 611 F.3d 783, 813 (11th Cir. 2010) ("[E]xtraterritorial jurisdiction over a conspiracy charge exists whenever the underlying substantive crime applies to extraterritorial conduct."); *United States v. Yakou*, 428 F.3d 241, 252 (D.C. Cir. 2005) ("The aiding and abetting statute is not so broad as to expand the extraterritorial reach of the underlying statute."). As a result, the Court has jurisdiction over all of the crimes alleged in count 1 and counts 15 through 75 if the underlying acts of money laundering occurred in part in the United States.

The acts of money laundering that are the subject of the alleged conspiracy in count 1 and that are alleged to have been committed by Galvis-Pena or aided and abetted by Galvis-Pena in counts 15 through 75 include transfers of funds into and out of accounts in the United States.

Judge Hagy found persuasive the reasoning of *United States v. Stein*, Crim. A. No. 93-375, 1994 WL 285020, at *4–5 (E.D. La. June 23, 1994), and concluded that the transfer of funds into and out of accounts in the United States is conduct that "occurs in part in the United States" under 18 U.S.C. § 1956(f).

Galvis-Pena does not object to the general proposition that the transfer of funds into and out of accounts in the United States is conduct that "occurs in part in the United States." Instead, he argues that there is no evidence that he personally made any transfers into or out of accounts in the United States.[3] Judge Hagy rejected this argument, holding that Galvis-Pena could not challenge the indictment on the ground that the allegations are not supported by adequate evidence. Although the Court agrees that evidence relating to its jurisdiction should not have been considered at this stage of the proceedings, it does so for slightly different reasons than those articulated by Judge Hagy.

"In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment." *United*

---

[3] This argument is only relevant to the substantive offense of money laundering. Even if Galvis-Pena did not personally make transfers into or out of accounts in the United States, he could be subject to the Court's jurisdiction for conspiring to do so or for aiding and abetting others in doing so.

8

*States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). However, in ruling on a motion to dismiss for lack of jurisdiction, it is sometimes appropriate to go beyond the face of the indictment and consider evidence relevant to jurisdiction. *See United States v. McPhee*, 336 F.3d 1269, 1271 (11th Cir. 2003) (reviewing district court's factual findings with respect to jurisdiction for clear error). But the court's ability to consider evidence is subject to one important limitation: only those defenses "that the court can determine without a trial of the general issue" may be raised by pretrial motion. FED. R. CRIM. P. 12(B)(2). Thus, a jurisdictional defense that is "intermeshed with questions going to the merits" of the case should not be determined by pretrial motion. *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987). Indeed, such questions are for the jury to decide. *United States v. Tinoco*, 304 F.3d 1088, 1104–05 (11th Cir. 2002).

With respect to count 1 and counts 15 through 75, the issue of extraterritorial jurisdiction hinges on whether the underlying acts of money laundering occurred at least in part in the United States. The issue is intermeshed with questions going to the merits of the case because the Court would have to consider evidence of the alleged criminal conduct in order to resolve it. As a result, the issue is for the jury to decide, and Judge

Hagy was correct to not consider Galvis-Pena's evidentiary arguments prior to trial. Consequently, Galvis-Pena's objections to Judge Hagy's analysis of count 1 and counts 15 through 75 are overruled.

### 4. Count 2

Count 2 of the indictment alleges that Galvis-Pena and his co-Defendants conspired to willfully aid and abet the distribution of controlled substances through acts of money laundering, all in violation of 21 U.S.C. §§ 841 & 846 and 18 U.S.C. § 2. In his motions to dismiss, Galvis-Pena also challenges count 2 based on the extraterritorial nature of the charged offense. Judge Hagy rejected this argument, concluding that the allegation in count 2 that Defendants' conduct occurred "in the Northern District of Georgia and elsewhere" is sufficient to establish a nexus with the United States, and consequently, extraterritorial jurisdiction.

In his objection to this portion of the R&R, Galvis-Pena argues that extraterritorial application of these statutes is justified only if the underlying offense involved importing drugs to the United States, exporting drugs from the United States, or selling drugs in the United States. He then argues that the facts alleged in count 2 regarding the underlying drug

offense are so vague that it is impossible to determine whether the application of extraterritorial jurisdiction is appropriate.[4]

The Court agrees that 21 U.S.C. §§ 841 & 846 may be applied extraterritorially only if the conspiracy contemplated the possession or distribution of controlled substances *in the United States*. *See United States v. Benbow*, 539 F.3d 1327, 1330–31 (11th Cir. 2008). The Court also agrees that the federal aiding and abetting statute, 28 U.S.C. § 2, applies to extraterritorial conduct only to the extent that there is extraterritorial jurisdiction over the underlying offense. *See Yakou*, 428 F.3d at 252. Thus, the Court will have jurisdiction over count 2 only if the alleged conspiracy contemplated aiding and abetting the possession or distribution of controlled substances *in the United States*.

However, the Court disagrees with Galvis-Pena's assertion that the indictment fails to sufficiently allege such a nexus with the United States. An indictment is sufficient so long as it tracks the wording of the statute setting forth the essential elements of the crime and adequately specifies the time, place and participants involved. *United States v. Harrell*, 737

---

[4] Galvis-Pena also argues that the description of the underlying drug offense is so vague that it does not fairly inform him of the charges against him or enable him to bar future prosecutions for the same conduct. As discussed above, this argument was not raised before Judge Hagy; therefore, the Court will not consider it here.

11

F.2d 971, 975 (11th Cir. 1984). Moreover, "an indictment for conspiracy need not be as specific as an indictment for a substantive count." *Id.* The indictment in this case sufficiently alleges that the conspiracy contemplated the possession or distribution of controlled substances in the United States by alleging that the conspiracy occurred "in the Northern District of Georgia and elsewhere." Therefore, the indictment is not facially deficient for failure to allege a nexus with the United States,[5] and Galvis-Pena's objection to Judge Hagy's ruling regarding count 2 is overruled.

### 5. Outrageous Governmental Conduct

In his motions to dismiss, Galvis-Pena also argues that the indictment should be dismissed based on outrageous governmental conduct. *See United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984). He contends that government agents were extensively involved in the alleged conspiracy, while he played only a minor role and acted at the direction of those agents. He concludes that "[i]f the government did not create this criminal enterprise they [sic] most certainly got involved in it deeply," and

---

[5] Of course, the government will have to prove this jurisdictional nexus at trial. *See Benbow*, 539 F.3d at 1331 ("[T]he district court committed reversible error when it refused [the defendant's] requested jury instruction, which would have required the United States to prove that [he] had conspired to either possess or distribute the cocaine in the United States.").

12

he argues that the extent of the government's involvement was outrageous enough to warrant dismissal.

Judge Hagy rejected this argument, concluding that Galvis-Pena failed to allege governmental conduct sufficiently outrageous to warrant dismissal. More specifically, Judge Hagy noted that Galvis-Pena failed to allege that the government created the crime or coerced his participation in it. *See United States v. Santana*, 6 F.3d 1, 5 (1st Cir. 1993). Judge Hagy also declined to hold an evidentiary hearing on the issue, reasoning that such a hearing would be indistinguishable from a full trial.

Galvis-Pena objects to Judge Hagy's recommendation on this issue, arguing that "after an evidentiary hearing to fully explain the extent of the government's involvement in the creation of, ongoing active and leading participation in the alleged criminal conduct, and financial coercion of the defendant would establish outrageous governmental conduct sufficient to justify a dismissal."

The Court agrees with Judge Hagy's conclusion that Galvis-Pena's briefs do not allege facts showing that the government created the crime or coerced his participation in it. Galvis-Pena's conclusory assertion in his objections to the R&R that an evidentiary hearing would show such

creation or coercion does not alter that conclusion, and without sufficient factual allegations to support an outrageous-governmental-conduct defense, the Court need not hold an evidentiary hearing on the issue. *See United States v. Holloway*, 778 F.2d 653, 658 (11th Cir. 1985) ("[T]he prevalent rule as to the showing required to entitle a defendant to a hearing on a charge of prosecutorial misconduct is that if defendants raise a material fact which, if resolved in accordance with the defendants' contentions, would entitle them to relief, they would be entitled to a hearing.") (internal quotation marks omitted).

Moreover, even if Galvis-Pena had alleged facts supporting his outrageous-governmental-conduct defense, a pretrial evidentiary hearing on the issue would be inappropriate. Much like Galvis-Pena's arguments regarding extraterritorial jurisdiction, his arguments regarding outrageous governmental conduct raise questions that are intermeshed with questions going to the merits of the case because they would require proof of the criminal conduct alleged in the indictment. Therefore, they are not capable of resolution without a "trial of the general issue" under Fed. R. Crim. P.

14

12(b)(2).⁶ Consequently, Galvis-Pena's objections to the R&R on this issue are overruled.

### C. Remaining Portions of the R&R

The Court has conducted a careful and complete review of those portions of the R&R to which no objection has been made and finds no clear error in Judge Hagy's factual or legal conclusions. Therefore, the Court adopts as its order those portions of the R&R.

## III. Conclusion

The Court ADOPTS AS ITS ORDER the R&R [336], except as modified herein. Galvis-Pena's motions to dismiss [308 & 317] are DENIED.

IT IS SO ORDERED this 9th day of February, 2012.

_____
Timothy C. Batten, Sr.
United States District Judge

---

⁶ However, unlike jurisdictional issues intermeshed with questions going to the merits, the issue of outrageous governmental conduct remains a question of law for the Court to decide. *United States v. Cuervelo*, 949 F.2d 559 567 (2d Cir. 1991). Thus, as Judge Hagy noted, Galvis-Pena will be permitted to move for dismissal at trial should the evidence establish this defense. Of course, he would bear the heavy burden of establishing conduct that is sufficiently outrageous to warrant dismissal. *See United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir. 1987).